**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**PETROLEUM TRADERS**
**CORPORATION,**

        **Plaintiff,**

**v.**                                   **Case No. 8:06-cv-2289-T-TBM**

**HILLSBOROUGH COUNTY and**
**CITY OF TAMPA,**[1]

        **Defendants.**
_____/

**O R D E R**

    THIS MATTER is before the court on **Plaintiff's Motion for Judgment on the Pleadings with Supporting Memorandum of Law** (Doc. 42) and Defendant Hillsborough County's response in opposition (Doc. 44).  Defendant City of Tampa joins in Defendant Hillsborough County's response (Doc. 51).  Also before the court is **Defendant Hillsborough County's Counter-Motion for Judgment on the Pleadings as to Counts I and II of the First Amended Complaint and Memorandum of Law in Support** (Doc. 45), Defendant City of Tampa's joinder in the motion (Doc. 52), and Plaintiff's responses in opposition (Docs. 48, 54).[2]  Oral arguments on these motions were heard on June 3, 2008.

    Also ripe for consideration is **Defendant Hillsborough County's Motion for Partial Summary Judgment (as to Counts III and IV of the First Amended Complaint)**

---

[1]Defendant David Gee, Sheriff of Hillsborough County, was dismissed as a party to this litigation on April 8, 2008.  (Doc. 50).

[2]Hillsborough County has also filed a notice of supplemental authority.  (Doc. 59).

(Doc. 64), Defendant City of Tampa's joinder in the motion (Docs. 65-66), and Plaintiff's response (Doc. 67) and supporting exhibits (Docs. 69-70).

I.

The facts as set forth in Plaintiff's Amended Complaint are largely undisputed.  In August 2003, Hillsborough County, on behalf of itself, the City of Tampa, and the Sheriff's Office (collectively "Defendants"), issued an Invitation for Bid #T-821-03(RB) seeking bids for a cooperative purchase of 87 octane gasoline, low sulfur # 2 diesel fuel and aviation fuel. In response to the bid solicitation, Petroleum Traders Corporation ("PTC" or "Plaintiff") submitted quotes at which it was willing to sell fuel to the Defendants.  In October 2003, the Defendants awarded PTC the gasoline and diesel portion of Bid #T-821-03(RB).  Beginning in November 2003, Defendants purchased fuel by issuance of purchase orders requesting PTC's delivery of the fuel.  By PTC's allegations, it has accepted and honored each of the Defendants' purchase orders.

In 2006, refiners from whom PTC purchased its fuel began phasing out low sulfur #2-diesel and replacing it with ultra-low sulfur no. 2-D fuel, which was more expensive.  By June 2006, low sulfur #2-diesel was no longer available from local distribution terminals and PTC began providing ultra-low sulfur no. 2-D fuel in its place.  Beginning in August 2006, PTC began including a $0.05 per gallon markup in its invoices to Defendants for the ultra-low sulfur no. 2-D fuel.  The Defendants accepted the fuel but have refused to pay the increased price reflected in the invoices.

In December 2006, PTC filed the instant action.  By Counts I and II of the First Amended Complaint, PTC seeks a declaration that there is no enforceable contract between the parties and that PTC is not obligated to honor any future purchase orders from the Defendants.  In Count III, it alleges that a separate, individual contract was formed each time the Defendants issued a purchase order to PTC and PTC delivered fuel to the Defendants. PTC alleges Defendants materially breached each of these agreements by refusing to pay PTC's invoices [in full] for the fuel it received.  In Count IV, PTC alleges that in the absence of a contract, it is entitled to recover damages for the value of its delivery of ultra low sulfur no. 2-D fuel to the Defendants under a theory of quantum meruit.  *See* (Doc. 18).

## A.

By its motion (Doc. 42), Plaintiff argues that judgment on the pleadings is warranted because the express terms of the bid documents, i.e., the Invitation for Bid #T-821-03(RB) and PTC's proposal, as accepted, establish that any purported contract was illusory and therefore unenforceable.  Stated otherwise, Plaintiff maintains that while the contract documents purport to contain an offer and acceptance, the documents fail to reveal consideration given by Defendants.  Specifically, Plaintiff notes that Bid #T-821-03(RB) lacks any minimum quantity term, allows the Defendants to purchase from other vendors, and may be terminated by the Defendants at any time.  Thus, Plaintiff urges that it is entitled to a declaration that the agreement is not an enforceable contract, it is not obligated to honor future purchase orders from Defendants, and that valid contracts were formed each time the Defendants ordered and PTC delivered shipments of fuel.

Defendants counter that the pleadings present an enforceable contract between the parties and they move for judgment in their favor on Counts I and II.  By Defendants' argument, a valid contract was formed in 2003 when Hillsborough County accepted Plaintiff's bid proposal, and the pleadings adequately support the conclusion that the parties acted in a manner exhibiting their mutual intent to form and to be bound to their 2003 contract.  Further, contrary to Plaintiff's assertion, Defendants note that the contract specifically addressed grade no. 2-D ultra low sulfur and the pricing of such.  Thus, by Defendants reading of the documents and application of pertinent authority, they are entitled to judgment on Counts I and II.  Because Plaintiff's motion does not directly assert that it is entitled to judgment on its claims for breach of contract or quantum meruit (Counts III and IV), Defendants do not address those claims.  (Doc. 45).

In reply, Plaintiff notes that Defendants ignore the lack of consideration and fail to address the legal authority adverse to its position.  Without consideration, Plaintiff argues there is no valid contract and it urges the court to deny the counter-motion.  (Doc. 48).

## B.

By their motion for partial summary judgment as to Counts III and IV, Defendants urge at the outset that the court lacks subject matter jurisdiction because Plaintiff cannot establish the amount in controversy for diversity jurisdiction.  In the alternative, Defendants urge they are entitled to summary judgment on those counts because there is an express contract between the parties, and even if there is not, Plaintiff fails to demonstrate that the "unspecified" purchase orders are separately formed contracts or that such were breached.  On this contention, they challenge Plaintiff's evidence claiming that the purchase orders are

not of record and have not been produced to Defendants.  Finally, they contend that no

equitable remedy is warranted as sought in Count IV because there is an express contract.

(Doc. 64).

      In reply to the jurisdictional argument, Plaintiff counters that it is legally permissible

to add together the damages (i.e., unpaid portions of the invoices) associated with its claims

against the County and to add together such damages associated with its claims against the

City to meet the jurisdictional requirements of 28 U.S.C. § 1332.[3]  As for its breach of

contract claim in Count III, Plaintiff disputes that it has not produced evidence sufficient to

establish its claim.  Rather, Plaintiff contends that the affidavit of PTC's owner, Michael

Himes, the purchase orders issued to PTC by the County, the invoices issued to the County

and the City of Tampa by PTC, and PTC's accounting spreadsheets demonstrate that the

parties entered into multiple contracts by way of their ordering, delivering, and invoicing

processes.  Plaintiff concedes that its claim for quantum meruit at Count IV will not survive if

the individual invoices are found to constitute express contracts.  (Doc. 67).  In sum, Plaintiff

asserts that it has adequately alleged and proved the court's subject matter jurisdiction and

that the purchases evidenced by the purchase orders, invoices, and Defendants' admissions

establish the existence of multiple contracts as a matter of law.[4]

---

[3]Plaintiff contends the unpaid portion of the invoices issued to Hillsborough County total $95,339.85, and the unpaid portion of the invoices issued to the City of Tampa total $88,309.65.

[4]Plaintiff also asserts that it timely produced ample evidence to defeat Defendants' motion and that such is clearly evidenced in the record.  (Doc. 67 at 6-9).  The court finds Plaintiff's argument on this matter persuasive and Defendants' objection to the allegedly late submissions are overruled.

II.

A.

Under Rule 12(c), a party may move for a judgment on the pleadings after the pleadings are closed.[5]  Fed. R. Civ. P. 12(c).  Entry of judgment on the pleadings "is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts."[6]  *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)).  In reviewing a motion for judgment on the pleadings, the court must accept all facts in the complaint as true and view them in the light most favorable to the nonmoving party.  *Hardy v. Regions Mortgage, Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006) (quoting *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1213 (11th Cir. 2001)).  The court may not enter judgment on the pleadings unless the allegations in the complaint contain "enough facts to state a claim to relief that is plausible on its face."  *Abdur-Rahman v. Walker*, No. 1:07-cv-00048-WSD, 2008 WL 905997, *3 (N.D. Ga. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)).

---

[5]Pleadings are considered "closed" when the defendants have answered the complaint. *See Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002); *Hill v. Gaylord Entm't*, No. 07-60745-CIV, 2008 WL 783756, *1 n.2 (S.D. Fla. 2008).  Here, Plaintiff filed its First Amended Complaint for Declaratory Judgment and Breach of Contract on June 28, 2007.  (Doc. 18).  Defendant Hillsborough County filed its Answer and Affirmative Defenses on July 17, 2007 (Doc. 22), and Defendant City of Tampa filed its Answer and Affirmative Defenses on August 6, 2007 (Doc. 27).  Thus, the pleadings are closed for the purposes of Fed. R. Civ. P. 12(c).

[6]Attachments to the pleadings may be considered under Rule 12(c) if the documents are central to the plaintiff's claim and undisputed.  *Horsley v. Feldt*, 304 F.3d 1125, 1134-35 (11th Cir. 2002).

Under Rule 56, the court shall grant summary judgment for the moving party only when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court may look to "the pleadings, the discovery and disclosure materials on file, and any affidavits" in determining whether summary judgment is appropriate. Fed. R. Civ. P. 56(c). The movant bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324; *Howard v. BP Oil Co.,* 32 F.3d 520, 524 (11th Cir. 1994). The non-movant must designate specific facts showing a genuine issue for trial beyond mere allegations or the party's perception. *Perkins v. Sch. Bd. of Pinellas County*, 902 F. Supp. 1503 (M.D. Fla. 1995). It must set forth, by affidavit or other appropriate means, specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

When deciding a motion for summary judgment, "[i]t is not part of the court's function . . . to decide issues of material fact, but rather determine whether such issues exist to be tried . . ." and "[t]he court must avoid weighing conflicting evidence or making credibility determinations." *Hairston*, 9 F.3d at 919 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)). The only determination for the court in a summary judgment proceeding is whether there exists genuine and material issues of fact to be tried. *Hairston*, 9 F.3d at 921; *see also Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997).

All the evidence and inferences from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997).

B.

On the substantive issues, the parties rely upon Florida case law and its Uniform Commercial Code ("UCC") in support of their respective positions. The UCC governs contracts for the sale of goods, including gas and oil. *See Tingley Sys., Inc. v. HealthLink, Inc.*, 509 F. Supp. 2d 1209, 1214 (M.D. Fla. 2007).[7] The UCC displaces the common law to the extent it is inconsistent therewith. *Id.* (citing *Burtman v. Tech. Chems. & Prods., Inc.*, 724 So.2d 672, 676 (Fla. Dist. Ct. App. 1999)); *see* (stating that the principles of law and equity shall supplement the provisions of the UCC unless displaced by particular provisions of it). However, unless a code provision dictates otherwise, the general law of contracts is applicable. One fundamental principle of contract law not displaced by the UCC is that a promise is not enforceable unless it is supported by consideration. *Johnson Enters. of Jacksonville v. FPL Group, Inc.*, 162 F.3d 1290, 1311 (11th Cir. 1998) (citing *Restatement (Second) of Contracts* § 17 (1981)). Where one party keeps to itself the option of fulfilling or declining to fulfill its obligations under the contract, there is no valid contract and neither side

---

[7]Fuel products, such as those at issue here, are goods within the purview of the UCC. *See* Fla. Stat. § 672.107(1) (stating that a contract for the sale of oil and gas is a contract for the sale of goods within this chapter if such is to be severed by the seller). Other courts considering the matter typically have held, either explicitly or implicitly, that fuel products are goods within the purview of the UCC. *See, e.g., Pennzoil Co. v. Fed. Energy Regulatory Comm'n*, 645 F.2d 360 (5th Cir. 1981); *W. Gas Processors, Ltd. v. Woods Petroleum Corp.*, 15 F.3d 981 (10th Cir. 1994); *Gatoil (U.S.A.), Inc. v. Washington Metro. Area Transit Auth.*, 801 F.2d 451 (D.C. Cir. 1986).

may be bound.  *Rosenberg v. Lawrence,* 541 So. 2d 1204, 1206 (Fla. Dist. Ct. App. 1988)

(citations omitted).

III.

At the outset, the court disagrees that the Plaintiff has failed to adequately allege or

prove the court's subject matter jurisdiction.[8]  By Plaintiff's proffered evidence, the amount in

controversy concerning Hillsborough County is in excess of $90,000 and the amount in

controversy concerning the City of Tampa is in excess of $80,000.  That Plaintiff aggregates

the numerous outstanding invoices against each to arrive at these respective figures is of no

consequence on the matter of the court's jurisdiction.  District courts have original

jurisdiction in civil actions between citizens of different states where the amount in

controversy exceeds a specified amount, currently $75,000.  28 U.S.C. § 1332(a)(1).  The

general rule is that a single plaintiff may aggregate the value of his claims against a defendant

to meet the amount-in-controversy amount for diversity jurisdiction, and the claims may be

related or unrelated.[9]  S*ee Snyder v. Harris*, 394 U.S. 332, 335 (1969); *Wolde-Meskel v.*

*Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 61-62 (2d Cir. 1999); *Griffin*

_____

[8]It is somewhat confusing that this issue is raised only in connection with Defendants'
motion for summary judgment on Counts III and IV.  Insofar as the contention is that Plaintiff
cannot establish the requisite jurisdictional amount, it would seemingly apply to the entire
suit.

[9]Aggregation is governed Federal Rule of Civil Procedure 18, which entitles a single
plaintiff to aggregate unrelated claims against a single defendant.  Fed. R. Civ. P. 18(a); 14B
Wright, et al., Federal Practice and Procedure § 3704, at 130.  However, if two or more claims
are alternative theories of recovery for the same harm, they may not be aggregated.  *See Suber
v. Chrysler Corp.*, 104 F.3d 578, 588 (3d Cir. 1997); *Gallo v. Homelite Consumer Prod.*, 371
F. Supp. 2d 943, 947 (N.D. Ill. 2005).

9

*v. Red Run Lodge, Inc.*, 610 F.2d 1198, 1204 (4th Cir. 1979); *Pearson v. Nat'l Soc'y of Pub. Accountants*, 200 F.2d 897 (5th Cir. 1953);[10] *Diefenthal v. Civil Aeronautics Bd.*, 681 F.2d 1039, 1053 n. 15 (5th Cir. 1982); *Everett v. Verizon Wireless*, 460 F.3d 818, 821-22 (6th Cir. 2006); *Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1121 (7th Cir. 1998); *Lynch v. Porter*, 446 F.2d 225, 228 (8th Cir. 1971); 14B C. Wright, A. Miller & E. Cooper; Federal Practice and Procedure § 3704 (2008); 3A J. Moore, J. Lucas & G. Grotheer; Moore's Federal Practice ¶ 18.07[1.-1] (1986).  The court has jurisdiction.

Upon consideration of the bid documents, Plaintiff is correct that any promises made by the Defendants were illusory and unenforceable.  When fully considered, Defendants actually promised only to do what they wanted, when they wanted, if they wanted.  Such a promise imposes no obligation and is illusory.  *See Office Pavilion S. Fla., Inc. v. ASAL Products, Inc.*, 849 So.2d 367, 370 (Fla. Dist. Ct. App. 2003); *Allington Towers N., Inc. v. Rubin*, 400 So.2d 86, 87-88 (Fla. Dist. Ct. App. 1981); *Johnson Enters. of Jacksonville*, 162 F.3d at 1311; *see also* Restatement (Second) of Contracts § 77 cmt.  Further, an illusory promise cannot constitute consideration.  *See Johnson Enters. of Jacksonville*, 162 F.3d at 1311.  Because Defendant's "promise(s)" in this case promised nothing, any contract intended to be formed is void of consideration and is not enforceable.[11]

_____

[10]In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[11]Defendants' reliance on *E. Air Lines, Inc. v. Gulf Oil Corp.*, 415 F. Supp. 429 (S.D. Fla. 1975) is not persuasive.  Unlike here, the court in that case found that the contract at issue was a valid requirements contract and thus did not lack mutuality of obligation.  *See id.* at 434-36.  The cases cited in Defendants supplemental pleading (Doc. 59) are not persuasive in the absence of an enforceable agreement to begin with.

On that conclusion, it follows in this case that Plaintiff is also correct that the course

of sales and purchases of diesel fuel that followed created a series of individual contracts.[12]

The UCC makes abundantly clear that "a contract for sale of goods may be made in any

manner sufficient to show agreement, including conduct by both parties which recognizes the

existence of such a contract." Fla. Stat. § 672.204(1). As Defendants note, "[r]eceipt and

acceptance of goods . . . constitutes an unambiguous overt admission by both parties that a

contract actually exists." Fla. Stat. § 672.201 cmt. 2. Indeed, "[c]onduct by both parties

which recognizes the existence of a contract is sufficient to establish a contract for sale

although the writings of the parties do not other wise establish a contract . . . ." Fla. Stat.

§ 672.207(3). Further, where, as here, the contract involves repeated occasions of

performance, "any course of performance accepted or acquiesced in without objection shall

be relevant to determine the meaning of the agreement." Fla. Stat. § 672.208(1).

Here, the undisputed facts reveal that shortly after the acceptance of the Plaintiff's

proposal, the Defendants began placing orders and accepting deliveries for gas and diesel and

paid in accordance with the prices offered in the bid documents. Despite the lack of an

enforceable written contract, the parties clearly evidenced their agreement for the sale and

purchase of fuel in each instance. Thus, the agreement of the parties resulting from Bid #T-

821-03(RB), PTC's proposal/offer in response and Defendants' acceptance was illusory and

did not create an enforceable agreement. However, under the UCC, enforceable contracts

---

[12]While Plaintiff seeks this further declaration on its motion, its First Amended
Complaint does not. Accordingly, the court declines to reach the matter on the motion for
judgment on the pleadings. However, the issue is raised by the arguments on summary
judgment and accordingly is addressed herein.

were created thereafter on each occasion when Defendants ordered and accepted fuel delivered by PTC.

As for Defendants' contention on summary judgment that there is an enforceable express contract that has not been breached and thus Count III fails as a matter of law, the court again disagrees for the reason set forth above - the express agreement claimed by the Defendants was illusory, without consideration and unenforceable.  By operation of the UCC, in each instance where Defendants ordered and Plaintiff delivered diesel fuel as requested, there was an enforceable contract.[13]  In the circumstances of this case, whether or not these agreements were breached as alleged in Count III is for another day.  There are no grounds on Defendants' motion that would permit the entry of summary judgment in their favor on that count.

As for the claim of quantum meruit in Count IV, Plaintiff pleads the claim as an alternative ground for relief should the court find that there is no express contract and thus no claim for breach of the same.  As grounds for summary judgment on the claim, Defendants urge that the claim fails as a matter of law because there is an express contract and under applicable law, Plaintiff may not pursue such claim in such circumstances.  Defendants are correct that, under Florida law, a plaintiff may not pursue an equitable theory such as quantum meruit "to prove entitlement to relief if an express contract exists."  *Ocean Commc'ns, Inc. v. Bubeck,* 956 So.2d 1222, 1225 (Fla. Dist. Ct. App. 2007) (citing e.g. *Kotvan v. Frederiksen*, 449 So.2d 1 (Fla. Dist. Ct. App. 1984)).  Here, while the court has rejected Defendants' assertion that the bid documents gave rise to an express contract, the

---

[13]As noted above, Defendants' claim that Plaintiff has failed to timely proffer evidence of these multiple contracts is without merit as demonstrated by Plaintiff's response.

12

court has concluded as a matter of law that there are a whole series of contracts in accordance with the UCC and, thus, Plaintiff's remedy for any breach is under its contracts claim and not under principles of quantum meruit.  Count IV is appropriately dismissed as a matter of law at this stage of the proceedings.

IV.

Accordingly, for the reasons set forth above, **Plaintiff's Motion for Judgment on the Pleadings with Supporting Memorandum of Law** (Doc. 42) is GRANTED to the extent set forth herein, and **Defendant Hillsborough County's Counter-Motion for Judgment on the Pleadings as to Counts I and II of the First Amended Complaint and Memorandum of Law in Support** (Doc. 45) is DENIED.  **Defendant Hillsborough County's Motion for Partial Summary Judgment (as to Counts III and IV of the First Amended Complaint)** (Doc. 64) is GRANTED to the extent that Count IV of the First Amended Complaint is dismissed.

**Done and Ordered** at Tampa, Florida, this 14th day of October 2008.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record

13